in All State Property&Casualty Ins CovSquires vs. Squires. Where is the accent? I will hear you for your last name. My name is Ed Shenderovich. May it please the Court? I represent the appellant in this case, Larry Squires. And I would like to request two minutes of rebuttal time. Granted. As I said, I represent Mr. Squires, who was driving his vehicle and encountered a large box in the middle of the road. He swerved to avoid the box, crashed and sustained serious injuries. He demanded uninsured motorist coverage from his carrier, All State, and All State denied coverage. District Court sided with All State and granted them motion for judgment on the pleadings. Your Honors, there are two issues in this case. One, whether transporting a box or any other item by vehicle constitutes use of that vehicle. Now to answer that question, the lower court relied on Smith. It's a Superior Court case where a bunch of kids were enjoying a hayride in a hay wagon, which was being pulled by a tractor. And one of the kids threw some hay in another boy's face who was riding his bicycle behind the hay wagon, hitting him in the face, causing him to lose control and hit a tree and sustain injuries. I would think you're drawing a distinction between the fact that you happened to be on the beach with a vehicle and you used something, between that and from something happening from the vehicle itself, which I presume you're arguing is the way the box would get off. Yeah, I'm just arguing that basically the box that caused my client's injuries was delivered to the location by a vehicle because it's a limited access highway. And by the way, Allstate for this argument concedes that the box came off a vehicle. Allstate concedes the box came from the vehicle? Correct. Just for purposes of this motion. Yes. You know, I wondered, as I recall, these policies have provisions for arbitration and you would have to show to the arbitrator how it came off, wouldn't you? That's correct, Your Honor, but this is a limited access highway. There are no overpasses. There are no businesses or residential areas around. There are no sidewalks. There are guardrails on both sides and in the middle. So there's no way, or put it this way, it's more likely than not that the vehicle dropped the box. There's no way a pedestrian could have thrown that box. Well, they don't contest that, from what you said. They don't contest that. As far as we're concerned, we're not interested in that today. Yes. But couldn't the use of the vehicle, let's say it was a vehicle that somehow deposited the box in the middle of the roadway, couldn't the use of that vehicle become too attenuated to say that this accident arose out of the operation, maintenance or use of a motor vehicle? What happens if the box was deposited a day before on the roadway? If it was in the middle of the roadway, I don't think it could have stayed there for a whole day without anybody hitting it or somebody cleaning it off the road. But let's suppose that when my client was driving, he saw a box come off the vehicle in front of him, and my client crashes, and the truck or the vehicle that dropped the box stops, and the driver comes back and says, oh, I'm sorry, my bad, I dropped the box. Now, will my client have a case, a third-party case against the driver of that vehicle? Of course. So if he has a case against them, he should clearly have a case, a U.M. case. What if it was a pickup truck and somebody was sitting in the bed of the pickup truck and threw the box? Good point, but again, it's more likely than not. People don't just drop... But you would agree if it was an intentional action, like throwing the hay... I would say chances are you're right. I would agree with that. But what you're saying is that at this point we should draw an inference that it fell because it wasn't secured correctly. Correct, because it could not have been thrown out of an automobile because it was too big to be thrown out of a window. It was two feet by two feet by two feet. Oh, it was? Was that the size of it? Yes. It was a large box. What was in the box? They estimated it? Yes, they estimated it. But the lower court relied on Smith, and I would say erroneously relied on Smith because in that case the holding was clearly that the reason the claimant was not entitled to uninsured motorist coverage is because a boy intentionally threw hay in the face of the boy. But your procedure today is not to get the coverage. You lost on the pleadings? Correct. And what would you anticipate would happen if we reversed? Would you still have to show? I mean, would there be a trial on what happened, or would that go to the arbitrator? There would be a trial as to what happened, and we would have to show to the jury that it is more likely than not that the box came off a vehicle, and it would be easy to show because, like I said, there was no overpasses, no way that a pedestrian could have thrown the box or the window. If the jury found no, then you're finished? Correct. Okay. Now, if the jury finds next, it's that point that you go to the arbitration. I would say probably the jury would have to find whether or not it's more likely than not that the box was deposited there negligently. Well, I was going to say, because what the arbitrators do is they determine, one, if there was negligence, so there was liability, and then, two, the scope of the damages. But wouldn't the jury just find the causal connection, and then you'd have to prove negligence to the arbitrators? Was there a panel? Again, if the jury finds that, yes, the box came off a vehicle, yeah, if we have to prove to the panel of arbitrators we can do that to show that it is more likely than not. Basically, what we're looking at is the district court made this rule that, look, no matter what impediment appears on the road, no matter how it displays there, it cannot give rise to a UAM action. Maybe it's like the celebrated English case that started racist. I think the barrel rolled out in the warehouse or something. Is there any significant difference between the policy and the statute? No, there is no significant difference between the policy and the statute, but what concerns me is that the Smith court clearly intended to say that the reason for holding that the claimant was not entitled to UAM coverage was because it was an intentional act of the child. And that broke the causal connection. Right, and they cited all these cases, Camacho, Roach, Alvarino, and Schweitzer, and they're all dealing with intentional acts or acts like a dog bit a passenger. The instrumentality that caused the accident was the throwing of the hay, not the operation of the vehicle. That's correct, Your Honor. The policy said that there'd be liability arising out of the ownership, maintenance, or use. I guess your theory is it was the use of the vehicle going down the road. Yeah, because, Your Honor, all manufacturers list cargo space for their vehicles to show how much cargo you can carry. Most of the vehicles have stowaway seats or removable seats to increase the cargo volume. Also, they have roof racks to put more cargo on. So clearly, transporting cargo by vehicle is use of a vehicle. But you don't know what the vehicle was, do you? No, we have no idea. Nobody knows. In the mid-1970s, I was sitting in a trial as a state judge where a tire came off an 18-wheeler and hit a car that was going the same direction behind it. Of course, it was insurance, obviously. It was a commercial thing. But would you say that's the use of the vehicle? It would be maintenance of the vehicle. Just a few weeks ago, there was an incident on Pennsylvania Turnpike where a truck spilled... It's not in the record before us. It's just an example of a truck spilling a sealant. The spill was 10 miles long and caused damage to 300 or 400 cars. So my question is... Thankfully, nobody was hurt. I don't think so. And the state police identified the driver, and the driver's insurance carrier now has a hotline for people to call so they can compensate them for it. Now, the question is, what if state police did not identify the driver? That's the DiPietro case, isn't it? What you described in that... Absolutely correct. DiPietro case. You're not entitled to U.M. coverage because we can't identify the truck. That's the whole point of uninsured motorists. Correct, if you cannot identify the truck. Basically, when the legislature passed the uninsured motorists law, their intent was to protect victims of drivers who... How much coverage is there in this case? $50,000. No matter what we do, you're a long way from the bank. Well, the idea is, honestly, $50,000 a bank, but the idea is to make sure that the laws make sense, that future claims are protected. If the coverage is $50,000, how's their jurisdiction here? Is this diversity jurisdiction? No, diversity is $75,000, right? Right. You said the coverage is $50,000? Well, we only have jurisdiction... If the amount in dispute is $75,000. Bet nobody raised that. Allstate is not a... Allstate is not a Pennsylvania corporation. They sought damages for unlawful refusal of pay. There's a statute in Pennsylvania. Bad faith. What? They sought bad faith damages, so you didn't necessarily just seek $50,000. We did seek bad faith. Okay. Is there anything else you'd like to tell us? Yes, I just also wanted to add that the lower court failed to see that it is very important to look at as to by which mechanism the foreign object got on the road. For example, if the tree is blown by wind and it causes injury to motorists, obviously the U.N. does not apply. You know, who decides if there was bad faith? I can understand where a jury would describe if there was damages. An arbitrator would decide the scope of damages and everything. A jury decides. Suppose the jury, suppose the arbitrator has found that there was no shelling, then there is no bad faith case. Thank you. We'll hear from Allstate. Good morning. May it please the Court, Sean O'Connell on behalf of the Allstate Insurance Company. Allstate brought this action? We brought a declaratory judgment action, Your Honor, to address a conflict with respect to the interpretation of the policy to ward off a potential bad faith claim. But this isn't a case where Mr. Squires filed the lawsuit claiming bad faith. He did so by way of a cross-claim.  Yes. Just a question here, it's a technical question. I noticed the brief has, it was signed by R. Sean O'Connell and here it says Robert S. O'Connell. I guess that's the same person, isn't it? It is, Your Honor. I go by my middle name. As opposed to being called Bobby Jr. or young Bobby, my parents said we'll call him Sean. Was jurisdiction raised below? It was not, Your Honor. So you filed a two-count declaratory judgment complaint. What were the two counts? The two counts were that we don't have an obligation to extend coverage and two, that there could not be bad faith. Because a claim for bad faith was raised but not pursued by way of litigation yet. With respect to the issue at hand, no matter what way you look at Mr. Squire's automobile accident, it was caused by a cardboard box. That fell off a vehicle. But it was the cardboard box that caused the accident. It fell off of a vehicle because whoever was on the vehicle didn't maintain the vehicle in a way to keep the cardboard box on it. Possibly. It could have been thrown off the vehicle. It could have been an act of God by a gust of wind. That's not accepted and that's not stipulated to. The police report in this case says that he swerved and missed a small plastic bag. The box was never recovered. We have to assume though, because this is a motion for judgment on the pleadings, that it was a box that he swerved to avoid. That's correct. Now let's say that Mr. Squires is driving down the road and he sees a car in front of him and it's got boxes with bungee cords strapped to it and all of a sudden the box falls off and he swerves to avoid it. That has the accident. You'd concede there's coverage there, right? Well, maybe. Well, you would agree that it arises out of the use of a motor vehicle. Again, maybe. It's possible that the bungee cord malfunctioned. A bungee cord that malfunctions is at the use of a motor vehicle. It's possible that the person who loaded that vehicle did not do it properly and it would be the improper loading of the vehicle. But under those circumstances, you'd have to get to a jury to decide what caused this box to fall. Sure. And we don't have those circumstances here. I know. You just made it up. Well, all we know is that there's a box in the road. Mr. Squires has testified that he never even saw it fall from a vehicle. He was coming down the road at night, saw a box in the road, and swerved to miss it. Well, now look, if it didn't, I mean, an animal didn't place it there. I mean, it had to come off of something. Things don't happen without a reason. Sure. Sure. And that's why we need to get to the standard. The standard is that the motor vehicle was the instrumentality that caused the accident, not that it was merely incidental. Isn't he alleging that? I mean, you know, I'm not unaccustomed to people conceding things on motions for summary judgment, motions on the pleading. But, boy, you conceded a lot here on this motion. I simply conceded that the box was deposited on the road by an unidentified vehicle, which, by definition, makes it uninsured. If you can look at Judge Conte's opinion at pages 5 and 6, she verbatim states forth what we stipulate to, and that is all. We never stipulate that the box is on the road because of the negligent operation of a motor vehicle. Well, who decides that? Maybe it was. Maybe there wasn't any negligence. I don't know. But who decides if there was negligence, which led the box to get on the road? That wasn't being funny when I spoke about race tips a lot, but it's the kind of a thing that ordinarily wouldn't happen if it was tied right. I mean, it could, I guess. It could have been thrown out. It could have been intentional. It could have been a malfunctioning bungee cord or rope. It could have been negligent packing. There are a whole host of things. This is a motion for judgment on the pleadings, though, not really getting into the facts. Is this pleading so sufficient that it couldn't support a judgment that it was negligence? I would suggest yes, and the reason being is we never get to the issue of whether or not the box was deposited on the road by an act of negligence. The first step that you need to address is whether or not the motor vehicle accident was caused by the operation, ownership, or maintenance of a motor vehicle. The Smith case, which is the Pennsylvania Superior Court case... You just changed the words. You said operation, maintenance, or ownership. The words are operation, maintenance, or use. You're correct, Your Honor. I mean, that's a difference. You are correct. Thank you. With respect to the standard, you never get to the negligence issue. Smith stands for the proposition that hay from a hay wagon is incidental to the use of a hay wagon. They knew there that it was intentionally thrown, and that's a different situation, isn't it, than the one that we have here? Respectfully, though, Your Honor, the holding in Smith was not predicated upon an intentional act. They addressed whether or not it was the use of a motor vehicle. All the motor vehicle there was put the person who was the perpetrator of the injury in a position where he could do it. So it's hard to attribute... I mean, now you're getting way out in cause and fact. It's different than saying that the motor vehicle itself set in motion the item that caused the injury. The motor vehicle didn't, when they threw the hay. Just put the person there. Oh, but it wasn't falling from a hay wagon. I thought it was thrown. Those were the facts, weren't they? Well, if those were the facts, then you can't say that it wasn't predicated on that, because we really don't know. The opinion stands for the proposition that the motor vehicle was not the instrument that caused the harm. The court held that the injuries were not caused by the use of the vehicle, but by the intentional act of a third party. So the court did say it was intentional, going back to what you just said. There's also language in that opinion that focuses on the fact that it's hay from a hay wagon. And if you look at Terwilliger, the case from the district court, you have gravel that fell from a construction truck. Clearly that was not an intentional act. It was gravel that was purposely placed on the road to fix a pothole. And if gravel from a truck that's purposely placed on the road is not the use of a motor vehicle, how in the world can a box that falls off a vehicle be use of a vehicle for the extension of coverage? I don't know how you come to some sort of understanding with that. Think about it. A construction vehicle that purposely deposited gravel on the road was not the use of a motor vehicle. Here we have a box that somehow was deposited on the road by a vehicle. If you're going to accept the way the rationale was followed in Terwilliger, clearly this is not the use of a vehicle here. And remember the reason why we have this statute. It comes from the Pennsylvania Motor Vehicle Financial Responsibility Law. And the purpose behind that statute that the legislators of this commonwealth adopted was to curtail the spiraling automobile insurance costs. So when we look and interpret how this statute should be used, that is the primary reason behind it. And the standard from Smith and interpreted by Terwilliger is that the use of the motor vehicle must be more than incidental. And hay and gravel on the road that's from a hay wagon or a construction vehicle has found to be incidental. It's happenstance. And that's what this is here. It's a box on the road that caused this accident. The gravel on the road wasn't happenstance. The gravel on the road was intentionally deposited there. Maybe they should have filed a claim against PennDOT for the negligence in terms of how they were doing the road patching, but it had nothing to do with the fact that the vehicle was used. Terwilliger is completely distinguishable. Well, it was a vehicle that caused the gravel to be knocked up into the air. That's one of the theories in Terwilliger. There were a couple of theories. And that's why they pursued the uninsured motorist claim. It was gravel that was deposited by a vehicle. We're going to suggest that if the box was knocked up in the air by another vehicle and hit Mr. Squire's vehicle, that he would not have a claim under that circumstance, but would he have when he swerved to miss it? That just doesn't make any sense. Remember, the box is what caused this accident. It's a condition of the road. The other vehicle wasn't even in the picture. Never saw the other vehicle. Just a box on the road. Let me ask you this question. If we reversed here and said no, there was enough to get past the motion for judgment on the pleadings, what do you contemplate would happen next? Well, we would go back and litigate the declaratory judgment action. And we would remove the stipulation for the purposes of the litigation. And what would you try to show the action? Well, we would stand for the proposition that the insured needs to establish that his injury was caused by the use of a motor vehicle. And all he can establish is that there was a box on the road that he swerved to miss. And there could have been any number of reasons, including the fact that I had nothing to do with the motor vehicle for that matter. That's correct, Your Honor. And he just, it would be like the burden of proof would be on him. That's correct. Now, I'm very much concerned about subject matter jurisdiction. You know, to me, it's unusual to file a declaratory judgment action for coverage or standard. But a declaratory judgment action to say there's no bad faith, that's using that as your way of getting into federal court on, these are just state law issues. This case doesn't belong in federal court. Perhaps we should have that addressed. I don't know how you all feel about it. You know, I'm not certain what the coverage is, whether it's 50,000 or 100,000 or 300,000. All right. Well, that would make all the difference in the world. So I'm not here to tell you that it is 50,000. Of course, there's diversity here. With respect, I'll say it's a Delaware corporation. Nobody's questioning that. It's the amount in controversy. And of course, we know that the federal courts have addressed this issue before because of the Turboliger decision. So we have the competence to do it. It's not that, but we're only supposed to exercise jurisdiction that's conferred to us. Sure. And we've got to raise that at any time it becomes apparent to us it may not exist. And you know, I quite frankly, I apologize. I'm not prepared to address the jurisdictional issue. That's understandable. I don't know the coverage at issue. Oftentimes you have stacking on policy. So if there's two vehicles, the 50 becomes 100. So I'm here just to address the standard and the standard through Smith and the standard through Turboliger is that it can't be merely incidental. And that's really what it is here. It's the fact that this vehicle, this box, it's incidental. Motor vehicle didn't cause this accident. Mr. Shemverova just told you initially my client was involved in an accident because he swerved to miss a cardboard box. Cardboard box is why we have this. You know, it says in the appellant's brief that the box was caused by 24 inch by 24 inch by 24 inch box, two feet all the way around. You agree with those measurements? Absolutely not. The police report says he swerved to miss a small bag, Your Honor. The box was never recovered. And who was the basis for the 24 by 24 by 24? Again, it's not my investigation, but I believe that they went and found some of the responding paramedics who then spoke to a private investigator who then in turn provided an estimate. But again, we would not concede that because quite frankly, there's a number of questions. The responding police officer indicated that Mr. Squires swerved to miss a small bag. Maybe there wasn't even a bag. Maybe there wasn't anything. I don't know. Thank you. Sure. You reserved it. Wait till he gets away. That's why we filed for bad faith, because they didn't do any investigation that they should have done. But what could they have done? They should have at least talked to the paramedics. They have not. I had to send out my own investigator to track down the paramedics, and they did give us a statement clearly that the box was two feet by two feet by two feet. And it was not just one, but two paramedics gave that statement. So clearly, that's evidence that they can't dispute because they didn't do any investigation whatsoever. As you envision this, it couldn't have gone through the window. Correct. And with respect to Terwilliger, Your Honor, you're correct. It is clearly distinguishable because it wasn't that the Pandod truck dropped the gravel, which caused the injury. The Pandod truck delivered gravel. Then Pandod used some kind of machine that would mix gravel with oil, apply it to the potholes, and then after they're done, they failed to sweep the road, leaving the gravel there. And another argument that the claimant made in Terwilliger is that maybe it is a phantom vehicle that kicked up the gravel that caused the injury. But there, there's no claim because the driver was not negligent. If you drive down the road and you kick up gravel, you didn't do anything negligent. Even if you know who kicked it up, you wouldn't have a third-party claim against them because what was negligent about their act? Nothing. And also, just a little response to what Mr. O'Connell was saying, the box could have been thrown off the vehicle. We've got to look at the situation as to what is more likely than not because if we're going to start asking, what if this happened, what if that happened, then basically we'd vitiate any law with respect to phantom vehicle because who knows, maybe a six-year-old was driving a phantom vehicle and you can't charge them with negligence. We don't know. So clearly we've got to look at what is more likely than not that happened and is more likely than not that the box fell off a vehicle and it was not thrown in. Thank you. I think we understand your position.